**Stanzak v. Stanzak**
*[Cite as 7 AOA 539]*

*Case No. CA89-09-124*
*Butler County, (12th)*
*Decided September 10, 1990*

*Edward G. Bruck, 110 North Third Street, Hamilton, Ohio 45011, for Petitioner-Appellee.*

*H. J. Bressler, Bressler, Shanks & Gedling Co., 304 North Second Street, Hamilton, Ohio 45011, for Respondent-Appellant.*

HENDRICKSON, J.

Respondent-appellant, John W. Stanzak, appeals a finding made by the Butler County Court of Common Pleas, Domestic Relations Division, that he committed an act of domestic violence against petitioner-appellee, Claudia A. Stanzak.

On August 16, 1989, appellee filed a petition for a civil protection order pursuant to R.C. 3113.31 alleging that appellant had attempted to run over her with a car and had endangered the parties' daughter. Following an ex parte hearing before a referee, she was granted a temporary protection order.

A hearing on the merits was held on August 29, 1989 before the trial judge. The evidence revealed that on the night of August 15, 1990, the parties were arguing regarding a planned trip to a water park. Appellee testified that during the argument, appellant told her "[w]hen I'm done with you you will be begging for mercy." She called her parents and asked them to come get her and the parties' two children, Melissa and Regina. When her parents arrived, Melissa was placed in their car. However, appellant was holding Regina down in bed and would not let her go. Appellee tried to get him to let the child go and slapped him in the face. Appellant then took Regina and placed her in his car. He put the car in reverse and began backing up. Appellee described the scene as follows:

"A. And then he-he grabbed Regina because I kept saying, let her go, and he ran out to the car, got in our car with her in the front seat and the passenger side door open, the driver's side door open and she was trying to get out on the passenger side to come with me. At this point he put the car--he started it, put it in reverse, backed up and he would have ran over me--she almost fell out head first onto the concrete, and struck the car next to him with the driver's side car door which stopped the car from rolling. And at this point the Police pulled up, they got out of the car-- ***."

Appellant testified that when appellee's parents arrived, they demanded to know what was happening. Appellant told them he hadn't done anything but that her father grabbed him by the arms. Her father let him go, but an argument ensued during which appellant called 911.

Appellant further testified that Regina woke up screaming for him. As he was comforting her, appellee slapped him in the face twice. He decided to leave, went outside and placed Regina in his car. Appellant described what happened next as follows:

"A. No, I never tried to get my wife in the car. I tried to my--I opened--the passenger side door was not open, because if the door was unlocked and I put Regina inside of the car all she would have to do is open the passenger door and grab Regina out of the car. So, I'm, you know, the passenger side was definitely locked and, uh, because I always keep my car doors locked. And, uh, I put Regina inside of the car and the door is open, I put the key in the ignition and Claudia is standing in between the door where you would close it and she's leaning up against the other car. It's a little red car that belongs to neighbors, okay. And she's leaning against the door and she's not letting me go anywhere and I'm starting the car and I'm asking her to move, I'm asking her to leave, I'm asking her to leave, and Regina--and she's screaming, Regina, you come with me, you come with me, you come with me. And, you know, I'm saying, Regina, stay here, wait, the police officer is going to come and if not we're going to go get him. No, so, finally Regina is very much upset and she wants to get out and I say, okay. So, I go to put the car in park and I thought I had it in park, okay. And I think I did have it in park, okay, and I went to turn off the ignition but the key didn't come out, so, I had it in--I had it, I guess, in the reverse which is just before park. I finally put it in park, took the keys out of the ignition, the door was open and Regina was getting out. I got out on the passenger side, I did not get out on the driver's side, okay. I'm holding onto Regina and Regina is saying, Daddy, Daddy, I want to go back to sleep, Daddy, I want to go in the house."

On the basis of the testimony, the trial court concluded:

"I'm going to find that there has been Domestic Violence but I'm going to find it has been on both sides. Mrs. Stanzak, I think, as a matter of fact you may have initiated the violence but, Mr. Stanzak, I think that your re-

sponse was inappropriate with the car and the child."

On August 29, 1989, a final protection order was filed stating that "the [c]ourt finds that [appellant] placed [appellee] by the threat of force in fear of imminent physical harm[.]" This appeal followed.

In his sole assignment of error, appellant alleges that the trial court erred in finding that he committed an act of domestic violence, as that finding was contrary to law, was against the manifest weight of the evidence and therefore constituted an abuse of discretion. He argues that there was no evidence that he attempted to cause or recklessly cause bodily injury. We find this assignment of error to be well-taken.

"Judgments supported by some competent, credible evidence going to all essential elements of a case will not be reversed as being against the manifest weight of the evidence." *C. E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St. 2d 279; *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St. 3d 77.

R.C. 3113.31 authorizes the trial court to issue a protective order in a case of domestic violence. Section (A) (1) defines "domestic violence" as follows:

"(1) 'Domestic violence' means the occurrence of one or more of the following acts against a family or household member:

"(a) Attempting to cause or recklessly causing bodily injury;

"(b) Placing another person by the threat of force in fear of imminent serious physical harm;

"(c) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 [2151.02.1] of the Revised Code."

The decision of whether to grant a civil protection order is within the discretion of the trial court.

*Deacon v. Landers* (June 14, 1990), Ross App. No. 1597, unreported. See also, *Thomas v. Thomas* (1988), 44 Ohio App. 3d 6, 8. Nevertheless, the party seeking the protective order bears the burden of establishing that the other party committed an act of domestic violence. See *Ventura v. Ventura* (Sept. 26, 1986), Lake App. No. 11-183, unreported, at 4.

We first note that appellant's argument in this case is somewhat misplaced. He argues that the trial court's finding that he committed domestic violence was error because there was no evidence that he attempted to cause or recklessly caused bodily injury as provided under R.C. 3113.31(A)(1)(a). However, the trial court's finding was based on R.C.3113.31(A)-(1)(b), that he placed appellee by the threat of force in fear of imminent physical harm.

Nevertheless, we find there is no competent, credible evidence to support this finding. The only threat made by appellant was the statement "[w]hen I'm done with you, you will be begging for mercy." In our view, this does not constitute "placing another person by threat of force in fear of *imminent* physical harm." This statement is obviously a threat, but may well have related to something else, such as custody or division of property. The relationship of the threat to appellant's subsequent conduct was tenuous at best. Appellee testified that she was afraid of appellant because he had assaulted her in the past, but nowhere in her testimony did she indicate that she was placed in fear of imminent physical harm.

Consequently, even if the finding were made under section (A) (1) (a), there would still be no evidence to support the finding. Thus, there is no evidence that appellee was injured or that appellant attempted to injure her. While appellant's conduct may indeed have been "inappropriate" as stated by the trial court, it does not amount to domestic violence under R.C. 3113.31. Appellee failed to meet her burden of establishing domestic violence. Accordingly, appellant's sole assignment of error is sustained.

*Judgment reversed.*

JONES, P.J., concurring separately.

I share our dissenting colleague's view that an appellate court should not reverse a trial court on the weight of the evidence, unless the trial court's decision is unreasonable. Nevertheless, we are required to do so in fulfilling our statutory function upon occasion. In the case at bar, appellant was found to have violated R.C. 3113.31(A) (1) (b) which reads as follows:

"(b) Placing another person by the threat of force in fear of imminent serious physical harm;"

Appellant was not found to have attempted to cause bodily injury pursuant to R.C. 3113.31(A) (1) (a), and it is therefore obvious that the court's finding was not based upon appellant's conduct in attempting to back out of his driveway. The finding of "domestic violence"

was based solely on the words uttered by appellant" [w]hen I'm done with you, you will be begging for mercy. Such a statement is certainly ambiguous, and may or may not constitute a threat of violence at some *future* time. Very clearly appellant did not threaten immediate force, even though he had just been slapped in the face by his wife. All in all, his control of his emotions was possibly admirable. He didn't slap her back. He didn't even threaten to slap her back or do anything violent. The statute is obviously designed to provide protection to a wife from domestic violence, something which occurs with regularity on a daily basis. The statute was sorely needed, but should not be misapplied.

In this case, the trial court found that there had been domestic violence "on both sides," and that Mrs. Stanzak initiated such. She slapped him in the face. He didn't slap her back or even *threaten* to do so. Essentially, he told her she would be sorry. Such does *not* constitute domestic violence. A violent man would have "decked her," but appellant did nothing except to attempt to leave.

I confess that I am also concerned as to the effect of a finding that appellant committed domestic violence, an effect possibly more severe in certain manifestations than a verdict of "guilty" for a crime. R.C. 3113.31(F) reads, in part, as follows:

"(1) A copy of any protection order, or consent agreement, that is issued or approved under this section shall be issued by the court to the petitioner, to the respondent, and to all law enforcement agencies that have jurisdiction to enforce the order or agreement. The court shall direct that a copy of an order be delivered to the respondent on the same day that the order is entered.

"(2) All law enforcement agencies shall establish and maintain an index for the protection orders and the approved consent agreements delivered to the agencies pursuant to division (F) (1) of this section. With respect to each order and consent agreement delivered, each agency shall note on the index, the date and time of the receipt of the order or consent agreement by the agency.

"(3) Any officer of a law enforcement agency shall enforce a protection order or consent agreement in accordance with the provisions of the order or agreement, including removing the respondent from the premises, where appropriate."

Unless the erroneous finding of the court is reversed, appellant will continue to be listed in the indices of various law enforcement agencies colloquially as a "wife beater," a label certainly undeserved under the facts of this case. I strongly believe the "Domestic Violence" statute should be applicable only to situations involving domestic *violence.* And we have plenty of that!

YOUNG, J., dissenting.

The trial court found that appellant placed appellee in fear of imminent physical harm by the threat of force in violation of R.C. 3113.31(A) (1) (b). On the night in question, appellant and appellee were arguing about a planned trip to Surf Cincinnati water park. During this argument appellant, who had previously assaulted appellee, stated "[w]hen I'm done with you you will be begging for mercy." Appellee then called her parents and asked them to come and get her and the two children, Melissa and Regina. When appellee's parents arrived Melissa was placed in their car. Appellant, however, was holding Regina down in bed and would not let her go. Appellee tried to get appellant to let go of Regina and then slapped him in the face. Instead of letting go, appellant took Regina and placed her in his car. Appellant put the car in reverse and began backing out. Appellee described the scene as follows:

"*** He--he tried to run over me with the car. He was backing out and I was--and his door was open, the passenger side door was open, it's a two door, and my daughter was in it and she was trying to get out to come with me and he wouldn't let her out and he puts the car in reverse and backed up and the car would have hit me except the door caught the car next to it."

Appellee then stated that she feared appellant because he had struck her several times in the past.

Threat and threaten are not defined in the statute so we must look to their common, accepted meaning. Webster's Third New International Dictionary (1981), defines threat as the sign of the approach of something evil or unpleasant; to have a menacing appearance. Threaten is defined as the probable visitation of some evil or affliction. There is no requirement that threats be strictly oral. A threat can be made by word or deed or a combination of the two.

A finding of domestic violence and the issuance of a civil protection order under R.C.

3113.31 is within the discretion of the trial court. *Thomas v. Thomas* (1988), 44 Ohio App. 3d 6, 8; *Deacon v. Landers* (June 14, 1990), Ross App. No. 1597, unreported. Thus, in order to reverse, this court would have to find an abuse of discretion. In light of the evidence concerning appellant's threat and his conduct with the car shortly thereafter, it is impossible for me to conclude that the trial court's finding of domestic violence under R.C. 3113.31(A) (1) (b) was "unreasonable, arbitrary or unconscionable." *State v. Adams* (1980), 63 Ohio St. 2d 151, 157. Accordingly, I find that the trial court's judgment should be affirmed, and thus I dissent.